FILED
DEC 13 PM 3: 52
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 13 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Western Division

| | | |
|---|---|---|
| TABETHA SPENCER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-99-P-0241-W |
| | ) | |
| VOLUNTEERS OF AMERICA | ) | |
| OF SOUTH ALABAMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## Opinion

Before the Court is a Motion for Summary Judgment filed by Defendant Volunteers of America of South Alabama, Inc. ("VOASA") on September 20, 1999. The matter was heard with oral argument at the December 3, 1999 motion docket. For the reasons expressed below, Defendant's motion is due to be granted.

### I. Facts

VOASA is a non-profit organization which is headquartered in Mobile, Alabama, and has had an office in Tuscaloosa since January of 1989. Tabetha Spencer first became employed by VOASA's Tuscaloosa office as a part-time "facilitator" in April of 1996. Plaintiff was originally hired and supervised by Petra Burroughs, a white woman. Burroughs' supervisor was Program Director Pat Larkin, also a white woman. In late 1996 or early 1997, VOASA was approached by the Shelby County Circuit Court and Department of Human Resources about providing a 24-hour supervised, non-institutional private home for JM, a teenage boy who was under the supervision of the court. Thereafter, VOASA opened a Supervised Community Living Home ("SCLH") on Camellia Drive in Tuscaloosa.

In March 1997, Spencer's supervisors, Burroughs and Larkin, offered her a full-time position as the Therapeutic Supervised Community Living Home Manager. Plaintiff commenced her three-month "evaluation period" in this new position around April 11, 1997. The SCLH actually opened on May 13, 1997, with one teenage consumer ("JM") living there. Because of certain reporting requirements and scrutiny that VOASA was subjected to by the Shelby County Court and DHR, Pat Larkin testified that she took a more hands-on role in overseeing Spencer's job performance than she customarily did with other employees. Petra Burroughs also supervised Plaintiff's work fairly closely, offering various suggestions and criticisms of Plaintiff's work methods and performance.

On May 18, 1997, Plaintiff submitted to her supervisors and to VOASA's Mobile headquarters a three-and-a-half page memorandum expressing her dissatisfaction with her two

supervisors. Plaintiff explained in this memorandum that she had experienced certain criticism of her job performance from Burroughs and Larkin that she did not believe was fair. Furthermore, the memorandum raised concerns that Plaintiff had about disparate treatment with respect to her race. Subsequent to receiving this memorandum, Iris Harris, a black female who serves as Director of Developmental Disabilities and works in VOASA's Mobile headquarters, telephoned Spencer to discuss her May 18th memo and to follow up on any racial allegations that Ms. Spencer might have with respect to her employment. Plaintiff's memorandum also led Pat Larkin and Petra Burroughs to conclude that their prior supervision and criticism of the Plaintiff had been ineffective and to ask that Spencer be issued a formal written counseling memorandum under VOASA's policies so she could be fully advised of what they considered to be her performance problems.

On May 29, 1997, Iris Harris received a draft reprimand/counseling memorandum from Larkin and Burroughs concerning Plaintiff's unsatisfactory performance. Agreeing that Plaintiff's supervisors had legitimate concerns about her failure to follow VOASA policies and procedures, the draft memorandum was reorganized and retyped in the Mobile office and then attached to a formal reprimand. By letter dated June 16, 1997, Harris again contacted Spencer concerning her May 18th memorandum. This letter informed Plaintiff that an investigation had been conducted into her allegation of racial discrimination, and that no evidence of discrimination had been found. The letter also forewarned the Plaintiff of the upcoming reprimand, which was provided to Ms. Spencer on June 17, 1997 in a meeting with Larkin and Burroughs.

According to Defendant, Plaintiff's performance problems continued, notwithstanding the aforementioned reprimand/counseling memorandum. On June 24, 1997, Plaintiff was given another written reprimand/counseling memorandum for violating VOASA's medication administration policy. On July 3, 1997, Plaintiff submitted a work schedule for the following week that indicated that she would work from 5:00 p.m. or 5:30 p.m. until 8:00 p.m. or 10:30 p.m. Petra Burroughs informed Plaintiff that her proposed schedule was unacceptable because it did not allow her to completely perform her duties as required by her written job description. Burroughs explained to Plaintiff that she was required to participate in JM's 4:15 p.m. counseling sessions Monday through Friday and that other responsibilities of her job could not be performed after 5:00 p.m., including scheduling doctors' appointments and speaking with the Department of Human Resources. Plaintiff responded to these scheduling demands by stating that only her proposed schedule accommodated her outside engagements for the week. Despite the disapproval of her supervisors, Plaintiff worked the hours she wanted to work during the following two weeks. When Plaintiff informed Burroughs on July 14th that she would be unable to attend a seminar scheduled for July 15 at 9:15 a.m., Burroughs requested by memorandum dated July 17, 1997 that Spencer meet with Larkin and her on July 23rd at 11:00 a.m. On the afternoon following Plaintiff's failure to appear at this meeting, Larkin and Burroughs went to the Camellia SCLH and hand delivered a termination letter signed by Iris Harris. When asked to return her pager and her keys, Plaintiff went out to her car and returned wearing a Mercedes name tag, proclaiming that she "had lots of jobs."

Following her termination, Spencer filed an EEOC charge on January 20, 1998[1] alleging only

---

[1]VOASA argues that Spencer's claim is time-barred because she did not file her EEOC charge within 180 days of her discharge, the "latest date" of discrimination according to her charge. Plaintiff

retaliation. The allegation of retaliation was based upon Plaintiff's contact with a Tuscaloosa attorney named Zondra Waters concerning potential race discrimination claims by herself and another VOASA employee named Yolanda Fields, whom Plaintiff had previously referred to Ms. Waters. Spencer contends that she contacted Waters about the potential claims and that Waters advised her that she had a conflict of interest because she was representing or had represented Pat Larkin, VOASA's Program Director. According to Plaintiff's EEOC charge, the retaliatory conduct began the following day with the issuance of her first formal reprimand and ended with her termination on July 23, 1997. On February 2, 1999, Plaintiff filed this lawsuit, alleging that she was retaliated against on the basis of her race in violation of Title VII and § 1981[2]. On September 20, 1999, Defendant VOASA filed the motion for summary judgment which is the subject of this opinion. For the reasons expressed below, VOASA's motion is due to be granted.

## I. Plaintiff's Retaliation Claims

To establish a prima facie case of retaliation under Title VII or Section 1981, a plaintiff must prove: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997). In order to satisfy the "causal link" prong of the prima facie case:

> a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action. Since corporate defendants act only through authorized agents, in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression, and acted within the scope of his or her agency when taking the action.

*Raney*, 120 F.3d at 1197.

Although actual knowledge may be proved by circumstantial evidence, "plaintiffs [must] show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories." *Id.*

---

counters by asserting that the final act of retaliation was a decision made by Iris Harris on November 24, 1997 to withhold a disputed paycheck relating to Plaintiff's last week of work. Despite the apparent problems with the timeliness of Plaintiff's claim, this Court declines to rule on this issue because Defendant is entitled to summary judgment on the merits. Furthermore, the fact that Plaintiff has also brought a claim under 42 U.S.C. § 1981 renders Defendant's argument inconsequential. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461 (1975)(holding that the procedural prerequisites to filing suit under Title VII do not apply in cases under the Civil Rights Acts of 1866 and 1871).

[2]While Plaintiff did not actually refer to 42 U.S.C. § 1981 in the part of her complaint entitled "Retaliation," she did make reference to § 1981 in the "Jurisdiction and Venue" portion of her complaint. To the extent that Defendant seeks to argue that § 1981 does not apply to claims for retaliation, its claim is without merit. *See, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997)(recognizing retaliation claims brought under § 1981).

In the present case, Defendant is entitled to summary judgment because Plaintiff cannot show a causal connection between her statutorily protected activity of contacting Zondra Waters on June 16, 1997 and the adverse employment actions about which she complains. Plaintiff admitted in her deposition that she has no evidence which demonstrates that the decision-makers at VOASA- Iris Harris, Pat Larkin, and Petra Burroughs- had any knowledge of her attempt to help Yolanda Fields in a possible discrimination suit or her alleged conversation with the attorney. In fact, while Zondra Waters did acknowledge receiving a telephone call from a woman who identified herself as a VOASA employee, she testified that she never contacted VOASA, Larkin, Harris, or Burroughs about the telephone call. While Plaintiff alleges that her reprimands began on the day after she had the conversation with Waters, the evidence in the record shows that Iris Harris was provided with a draft of the first reprimand more than two weeks before the alleged conversation. Furthermore, in a letter dated June 16, 1997, Harris forewarned Plaintiff of the upcoming reprimand. As such, it is apparent that Plaintiff's only evidence of retaliation is composed of nothing more than "curious timing coupled with speculative theories." *See Raney*, 120 F.3d at 1197.

In response to Defendant's Motion for Summary Judgment, Plaintiff asserts that the "protected expression" which caused VOASA to retaliate was the memorandum she wrote to her supervisors on May 18, 1997. Yet, in Plaintiff's EEOC charge, her complaint, and her deposition testimony, she failed to identify anything other than her attempt to assist Yolanda Fields and her dealings with attorney Waters as her protected expressions. Nevertheless, even considering Plaintiff's May 18th memorandum as her protected expression in this case, she has still not established a prima facie case. In the May 18th memo, Plaintiff made only vague allegations of racism and prejudice in Tuscaloosa generally and pointed out that the VOASA in Tuscaloosa did not have any blacks in supervisory positions. Mainly, Plaintiff's memo focused on her disagreement as to the manner in which her supervisors criticized her work performance. Furthermore, the only person which Plaintiff alleges had knowledge of her protected expression was Iris Harris, who, like the Plaintiff, is a black woman. As such, Plaintiff has failed to show that her protected expression and the ensuing adverse employment actions were wholly unrelated. *See Simmons v. Camden County Board of Education*, 757 F.2d 1187, 1189 (11th Cir. 1985).

Even Assuming that Plaintiff could establish a prima facie case in this instance, Defendant is still entitled to summary judgment because Plaintiff has not offered any evidence to show that VOASA's legitimate, nondiscriminatory reasons for issuing reprimands and terminating her were pretextual. As legitimate, nondiscriminatory reasons for its actions, VOASA has pointed to Plaintiff's unsatisfactory work performance and her refusal to follow policy and orders from supervisors. Spencer's unsatisfactory work performance was documented in two formal reprimands which were authorized by three levels of management above the Plaintiff. Furthermore, Defendant contends that Plaintiff was terminated at the conclusion of her evaluation period because she refused to follow her supervisor's express directions regarding her work schedule. In response to Defendant's proffered reasons, plaintiff has offered no evidence of pretext, other than to say that a "question of material fact regarding a 'credibility determination'" renders summary judgment inappropriate. Nevertheless, Plaintiff offers no evidence that would call into question the credibility of Defendant's assertions. VOASA is therefore entitled to summary judgment in this case.

### III. Conclusion

For the above reasons, Defendant VOASA's Motion for Summary Judgment is due to be granted.

Dated: _____Dec. 13_____, 1999

_____
Judge Sam C. Pointer, Jr.

Service List:

    Mr. Donnis Cowart
    Mr. Paul D. Myrick
    Mr. Scott Hetrick
    Mr. E. Kenneth Aycock, Jr.
    Mr. Bradley R. Byrne